UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

GAINESVILLE DIVISION

MARK CHAPMAN HARRIS, Pro Se

And on behalf of others similarly situated

Plaintiffs,

vs.

MICHAEL BERRY, individually

WARREN SILBERMAN, individually

STEPHEN GOODMAN, individually

SANDY CLYMER, individually

2:12-CV-260

Statement of Claims

1. This clam is brought under 42 U.S.C. § 1983 for deprivation of civil rights as well as for violations of the Freedom of Information Act, the Privacy Act, HIPAA laws and the RICO Act. RICO violations include wire fraud, witness intimidation, and repeated acts of public corruption.
2. The Plaintiff alleges that the Federal Aviation Administration's substance abuse program known as the "HIMS" program, created by the Airline Pilots Association (ALPA) labor union, under the leadership of that same union alongside President Obama appointee, disgraced former boss of that union, Jerome "Randy" Babbitt, became a corrupt enterprise in which FAA doctors collude with private doctors to engage in profiteering.
3. The Plaintiff, who has paid forced union dues for 11 years to that same union, the Airline Pilots Association, was forced into a rehab for profit racket by FAA doctors long known to be corrupt, colluding with private doctors to falsify records. That very same union which created this program has participated in the Plaintiff's civil rights violations, pressured him to remain silent, and refused, as it has with other victims, to assist him.
4. The Plaintiff has faced retaliation for complaints and exercising his free speech.
5. The FAA, under this administration, has stonewalled and defied federal law in refusing to answer questions, produce records, or grant the Plaintiff his right to due process. Meanwhile ALPA has refused to provide any assistance in obtaining these records or correcting this matter, and has participated in the violation of the Plaintiff's rights.

## Events

1. The Plaintiff is employed as a pilot at ExpressJet Airlines, a regional contract carrier.
2. In 2010, the Plaintiff was a victim of malicious, slanderous, and false allegations regarding alcohol abuse and his mental fitness to operate an aircraft. These allegations were part of a lengthy pattern of conduct targeting the Plaintiff as the father of crime victims of the accuser, along with other witnesses including death threats.
3. Despite the lack of credibility of the allegations and of the accuser, the Plaintiff was sent to Dr. C.R. Harper, for evaluation.
4. Dr. Harper is an Aviation Medical Examiner (AME) and designated HIMS sponsor. The HIMS program is the FAA's substance abuse program for which Dr. Harper profits.
5. The Plaintiff believes that Dr. Harper receives substantial income from this program.
6. After finding no evidence of a lack of fitness Dr. Harper began a series of deliberate and transparent efforts to wrongfully place the Plaintiff in an FAA substance abuse and monitoring program knowing that he did not meet any criteria for this program, and has continued in this conduct, colluding with other "HIMS" participants to keep him there.
7. Dr. Harper, with no probable cause or rational explanation, sent the Plaintiff to a psychiatrist for further evaluation, fishing for any excuse to justify treatment.
8. On May 4, 2010, after Dr. Harper had obtained reports from evaluations performed by an extremely well qualified respected psychiatrist and a well qualified and extremely respected psychologist who performed a full battery of psychological tests, both finding the Plaintiff fit to fly, he exerted influence with Dr. Berry, who he identified as his personal friend, and Dr. Silberman at FAA headquarters and asked that the Plaintiff's medical certification be revoked under the claim of alcohol abuse.
9. The Plaintiff had a 20 year aviation history with no such allegations, a flawless decade long history with his employer, and had not consumed alcohol in years.
10. The Plaintiff does not believe there is any credible or plausible reason that Dr. Harper went directly to Dr. Berry with these allegations just as there was no reason to send the Plaintiff to a psychiatrist whose evaluation he ignored when he did not like the findings.
11. That same day, May 4, 2010, Sandy Clymer, a subordinate of Dr. Silberman, planted a false allegation of a DUI in the Plaintiffs FAA records with the words "as requested".
12. The next day, May 5, 2010, the Plaintiff's medical certification was revoked by Dr. Silberman on the basis of the allegation of alcohol abuse despite the fact that he did not drink, and did not meet published FAA criteria or any criteria for such a claim.
13. There is no other plausible reason other than deliberate fraud that the very day Dr. Harper acted unethically to revoke the Plaintiff's medical certificate and simultaneously asked that the Plaintiff be placed in a program for which he would profit that a DUI was planted in his records by a staff member of Dr. Warren Silberman, Sandy Clymer.
14. The Plaintiff questioned this decision with Dr. Harper who concealed the allegation of the DUI from the Plaintiff. The Plaintiff ordered his certified medical records from the FAA to see if there were errors in the records and informed Dr. Harper of this. Knowing that

this decision could not hold, and the Plaintiff would learn about the DUI, Dr. Harper and his co conspirators were required to shift gears.
15. The Plaintiff, again dismayed, questioned this decision through Dr. Harper. Dr. Harper and Dr. Berry then engaged in extortion and went on an unethical fishing expedition.
16. Dr. Harper demanded that the Plaintiff produce confidential and Privacy Act protected military records. He claimed that if the Plaintiff did not that Dr. Berry would exert influence through a General Officer in Washington and unlawfully obtain them.
17. This was extortion. It was made clear the Plaintiff would never fly again if he did not comply and the records would be obtained unlawfully anyway.
18. The Plaintiff provided Dr. Harper with those records who provided those records, which were not medical in nature, to Dr. Berry without releases in violation of federal law.
19. Those records were disseminated to third parties, again in violation of federal law.
20. Dr. Harper, still clearly trying to justify the unethical conduct of himself and his co conspirators, manufactured claims regarding alcohol not supported by those records.
21. On June 22, 2010, Dr. Alan Sager, an FAA psychiatrist, put together a memorandum that full of falsehoods which can only be described as an abomination, void of any due diligence, professional ethics, or honesty. It claimed the Plaintiff had been charged with a DUI and treated for alcoholism in the military. These were deliberate falsehoods. This report goes further to quote the Plaintiff as saying that he had quit drinking because of a DUI. The Plaintiff has never been charged with a DUI or ever spoken to Dr. Sager.
22. On July 14, 2010, Dr. Stephen Goodman, in Los Angeles, the Senior Regional Flight Surgeon Western Pacific Regional Medical Office, sent the Plaintiff a letter denying his appeal for medical certification, changing the allegation from abuse to alcoholism.
23. The Plaintiff never submitted an appeal, and has no history whatsoever to justify this claim of alcoholism. The Plaintiff was deliberately denied the right to appeal by an alleged appeal he never made. This denial was intended to prevent the Plaintiff from appealing once he received the records he had requested and learned of the DUI.
24. The Plaintiff, who resided in Florida, not Guam or Wake Island, and was employed in Atlanta, was and there is no legitimate reason as to why Dr. Goodman, who he suspects is part of this "HIMS" racket, had any role in his medical certification. To the Plaintiff's knowledge, the FAA's Atlanta office has never been informed of the Plaintiff's case.
25. The Plaintiff was forced into "aftercare". This was unethical as the Plaintiff met no criteria for treatment and had never been treated nor did he drink. No credible professional would place someone in aftercare who had never been diagnosed or treated.
26. The Plaintiff was ordered to attend weekly meetings at his expense. The Plaintiff appealed to Dr. Harper and through Dr. Harper, Dr. Berry to allow him to attend a Christian support group called the Most Excellent Way. The Plaintiff was already involved in this group which had a chapter at his church. The group was free and provided childcare. This is an international organization and court recognized for substance abuse issues. Dr. Harper and Dr. Berry, clearly intent on controlling the

Plaintiff's future quarterly and annual reports, refused based on the fact that the group was a Christian group in violation of the Plaintiffs religious liberty.

27. The Plaintiff was required to pay to go to a group with no childcare, led by an individual with a relationship with Dr. Harper so that he could control the Plaintiffs evaluations.
28. The Plaintiff was then forced to sign a contract agreeing to gross invasions of his privacy and 3 years of "monitoring" for which Dr. Harper would profit.
29. The Plaintiff's contract required an annual psychological evaluation. In 2011, Dr. Harper sent the Plaintiff to Dr. Doyle, of Talbott Recovery, in Atlanta. Dr. Doyle again found that the Plaintiff did not meet diagnostic criteria for alcohol abuse or dependence. He then recommended that the Plaintiff continue in an abusive monitoring program.
30. Dr. Doyle and Dr. Harper then sent the Plaintiff a threatening note, as a threat to not make waves, accusing him of being an alcoholic in denial claiming he had been diagnosed with and treated for alcoholism in the military. None of these claims are true.
31. In Feb, 2012, the Plaintiff made a complaint to the Department of Transportation Inspector General via the internet. The Plaintiff was subjected to selection for 5 random drug and alcohol tests over the next three weeks in retaliation.
32. In the spring of 2012, the Plaintiff, after moving to Georgia from Florida, approached a Christian nonprofit organization, Mustard Seed Counseling, that is well respected and court recognized about participating in weekly groups to satisfy his weekly meeting requirement. The Plaintiff was required to submit to an assessment as a condition for entering this group. Again he was told he did not meet criteria for attendance for the obvious reason; he had not consumed alcohol in years. The Plaintiff attended anyway.
33. On July 31, 2012, the Plaintiff obtained his medical evaluation, which is supposed to be annual, from Dr. Harper. He queried Dr. Harper as to why he was being required to obtain an evaluation every 6 months at the expense of $210, pointing out that he is only required to obtain an evaluation every 12 months. Dr. Harper became defensive and said that "everyone" with a special issuance has to do this. The Plaintiff was forced to obtain this unneeded evaluation at his expense or would not have been able to return to work.
34. Also at that visit, the Plaintiff again queried Dr. Harper about assisting him in clearing up the DUI allegation. Dr. Harper became defensive and said "what do you want, to undo your diagnosis of alcoholism?" The Plaintiff has never been diagnosed with alcoholism just as he has never been charged with a DUI and never had a weeklong "outpatient" treatment in the military. Dr. Harper then began to pose theories as to where the DUI allegation came from knowing all the while where it came from. He indicated he had no intention of releasing the Plaintiff early regardless of any recommendation.
35. On Aug 1, 2012, Dr. Harper called the Plaintiff and asked him if he had made an appointment to see the "shrink" Dr. Doyle. The Plaintiff informed Dr. Harper that he had made an appointment based on a referral with Dr. Michael Vaughn, the Director of Addiction Services for Peachford Hospital and Medical Director of MARR, a private nonprofit residential addiction treatment program. Dr. Vaughn could not have more

impressive credentials and qualifications. Dr. Harper threw a tantrum and told the Plaintiff he was "wasting his money" and that he would not approve any evaluation from this doctor. The Plaintiff believes that Dr. Harper, who had already indicated a determination to unethically keep the Plaintiff in a program he should have never been placed in, was determined to keep control of any evaluations to accomplish that goal.
36. Around the same time, Mike Johns, the Director of Mustard Seed Counseling advised the Plaintiff he was recommending he be released from the program and was perplexed as to why he was ever placed in the Program. He repeatedly requested records from Dr. Harper regarding any past evaluations or treatment who has refused to provide them.
37. The Plaintiff filed suit in Federal Court on Aug 8, 2012 naming Doctors Harper, Doyle, Berry, Silberman, and former union boss and FAA administrator Randy Babbitt, who was forced to resign due to a real DUI and claimed he did no wrong driving a vehicle intoxicated. The Plaintiff did not know that Dr. Silberman had retired.
38. On Aug 14 the Plaintiff obtained his evaluation and again revealed he did not meet criteria for alcoholism or abuse, did not need treatment or monitoring, and did not meet the published criteria for the monitoring program he was forced into. This evaluation was consistent with past evaluations.
39. After discussing the matter with an attorney, the Plaintiff withdrew his case and filed a detailed and lengthy complaint with the DOT Inspector General. The Plaintiff sent a copy of that complaint to acting FAA Administrator Huerta via certified mail. The Plaintiff also asked Congressman Tom Graves to assist him as well.
40. In retaliation, the Plaintiff received a letter from the FAA dated Aug 28, signed by Sandy Clymer, the same Sandy Clymer that falsified official records at someone's request planting a DUI in the Plaintiff's records as someone "requested" to justify revoking the Plaintiffs medical certificate for alcohol abuse, notifying him that Dr. Harper had resigned from his case and sent an incomplete package to the FAA. This report was obviously incomplete due to Dr. Harper's refusal to accept an evaluation from one of the most qualified doctors in the state of Georgia or any other evaluation he didn't like.
41. The lawsuit filed against Dr. Silberman, Sandy Clymer's former boss, was returned under the pretense that he could not be located. This is nonsense as his new address is all over the internet. More relevant is that this act occurred after this suit was filed and these parties had a conflict of interest knowing its content and retaliated.
42. The letter asked the Plaintiff to find a new sponsor and undergo another evaluation. He was told if he failed to do so his medical certificate would be revoked in 30 days.
43. The Plaintiff could not afford to pay for an evaluation, and did not find it possible or reasonable to satisfy these absurd requirements. The Plaintiff opted to let the FAA revoke his medical certificate and appeal to the National Transportation Safety Board.
44. The Plaintiff then received a letter from the DOT Inspector General again refusing to investigate what is clearly criminal wrongdoing by FAA doctors. For more than two years Dr. Harper and the FAA have outright refused to produce the source of the

allegation that the Plaintiff had been charged with a DUI in blatant violation of his federally protected right to that information.

45. It is now October 31 and the Plaintiff has not received any notification of the revocation of his certificate. The Plaintiff is concerned this is a deliberate effort to prevent him from invoking his right to appeal in the prescribed time frame. This would be another due process violation just as occurred in 2010, when an appeal was denied which was never made in order to prevent the Plaintiff from invoking his right and making that appeal.
46. The Plaintiff is now in poverty, has no income, is the sole parent of special needs children who require daily medication, weekly counseling, and visits with a psychiatrist, and does not believe he can return to work given the last letter he received from the FAA.
47. He has submitted an appeal but suspects it will be rejected as the FAA refuses to produce the promised and threatened denial letter with a case number.
48. The Plaintiff has never been charged with a DUI, he has never been diagnosed with alcoholism, he does not meet diagnostic criteria for alcoholism or abuse, and has never been treated for alcoholism in the military or elsewhere, yet to date, neither ALPA nor the FAA or DOT will correct these false claims that remain in the Plaintiff's records, have led to gross invasions of the Plaintiff's privacy, and destroyed his career.

## RELIEF REQUESTED

49. The Plaintiff seeks a court appointed attorney with fees paid by the Defendants.
50. The Plaintiff seeks an injunction barring any further action against his medical certificate.
51. The Plaintiff seeks remedy under RICO, disbanding the HIMS program, as it is unnecessary, a corrupt enterprise, and operates contrary to public safety.
52. The Plaintiff asks the Court order the Justice Department to investigate RICO violations. and falsification of records in the FAA's medical certification division.
53. The Plaintiff seeks compensation in treble under RICO for lost wages and expenses.
54. The Plaintiff seeks a court order that the DOT cease in defying federal law and produce records in accordance with the Freedom of Information Act.
55. The Plaintiff seeks injunctive relief from frequent unreasonable search and seizure of bodily fluids from the Plaintiff that lack any probable cause or legal justification.
56. The Plaintiff seeks injunctive relief from forced treatment.
57. The Plaintiff seeks punitive damages.

## DEMAND FOR JURY TRIAL

58. Plaintiffs hereby request trial by jury on all issues so triable.
59. Respectfully submitted this 31 day of Oct, 2012.

11-2-2012                                              (Signature of Plaintiff)
_____                                      _____
(Date)                                                 885 Partin RD
Jerri B. Pilgrim                                       Cleveland GA 30528
notary public                                          706-865-6606
comm. exp. 10-1-2013